UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ELIJAH RYAN HAMMOND, | ) | |
| | ) | |
|     *Petitioner* | ) | |
| | ) | |
| v. | ) | 1:11-cv-131 |
| | ) | *Chief Judge Curtis L. Collier* |
| JENNIE L. JOBE, WARDEN, | ) | |
| | ) | |
|     *Respondent* | ) | |

**MEMORANDUM**

Petitioner Elijah Ryan Hammond ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Court File No. 1). Petitioner is a prisoner confined at DeBerry Special Needs Facility in Nashville, Tennessee. Petitioner is attacking his 2003 aggravated child abuse by use of a deadly weapon (a paddle) and aggravated assault convictions and twelve year sentence (at 100%) from the Criminal Court of Bradley County, in Cleveland, Tennessee. This matter is presently before the Court on Respondent's motion to dismiss (Court File 8).

Respondent contends the habeas petition should be dismissed as it was filed outside of the one-year statute of limitations applicable to federal habeas corpus petitions (Court File No. 9). 28 U.S.C. § 2244(d)(1). Petitioner, who is proceeding *pro se,* argues that due to his mental health condition he was incapable of filing a timely habeas petition on his own (Court File No. 1, p. 13, ¶ 18).

To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). For the reasons explained below, because Petitioner's allegations may constitute

extraordinary circumstances to justify equitable tolling of the one year statute of limitations for filing a federal habeas petition, an evidentiary hearing is necessary. The record needs further development regarding Petitioner's exercise of due diligence in pursuing his § 2254 federal habeas petition and Petitioner's claim that his mental impairment along with counsel's misconduct constitutes an extraordinary circumstance which prevented him from timely filing his federal habeas petition. Accordingly, the Court will **REFER** the matter to the Magistrate Judge to appoint counsel and the matter will be set for a hearing before the Chief District Judge under separate Order.

**I.      Procedural History**

*A.      Underlying Criminal Conviction*

Petitioner was convicted in 2003, after a bench trial before the Bradley County Criminal Court of one count of aggravated child abuse by use of a deadly weapon and one count of aggravated assault involving his minor daughter. Petitioner was sentenced to serve 12 years in the Tennessee Department of Corrections. Petitioner's sentence and conviction were affirmed on direct appeal *State v. Hammond*, No. E2004-01061-CCA-R3-CD, 2005 WL 877051 (Tenn.Crim.App. April 15, 2005), *perm. app. denied* (Tenn. Aug. 29, 2005).[1]

Even though the Tennessee Supreme Court had denied Petitioner permission to appeal on August 29, 2005, trial counsel notified Petitioner by correspondence dated October 28, 2005, that he had not received a decision from the Supreme Court (Court File No. 1-1, p.4). Counsel's July

---

[1] Although it will be discussed in further detail in Section III.B, during February and March of 2005, Petitioner was diagnosed as suffering from Schizophrenia, Paranoid Type, and a Conservator was sought because he was "unable to understand the need for treatment with psychotropic medication or the correlation between the medication and the cessation of his symptoms." In addition, it was the opinion of Dr. William Mays that Petitioner was incapable of making rational decisions regarding his treatment needs and is in need of a conservator to monitor his medical and psychiatric treatment (Court File No. 1-1, pp. 20-23).

2

31, 2006, correspondence notified Petitioner he still had not heard from the Tennessee Supreme Court but would contact the court and notify Petitioner of the status of his appeal (Court File No. 1-1, p. 5). Finally, almost eight months later, on March 19, 2007, counsel wrote Petitioner notifying him that his conviction had been affirmed on August 29, 2005, but his office did not receive notice of the decision until he "called the Supreme Court [the previous] week." (Court File No. 1-1, p. 6).

### B.     *Collateral Proceedings*

Although Respondent failed to submit any documents to support his motion to dismiss, other than the appellate decision on direct appeal, it appears from Petitioner's petition, that he filed a state habeas case on October 24, 2008 (Court File No. 1-1, p. 3, ¶ 11), which was denied on February 3, 2009, because he failed to provide the court with supporting documentation that his judgment was void or the sentencing court lacked jurisdiction to impose the sentence. The court further concluded that to the extent the petition could be construed as a petition or post-conviction relief, it was time-barred (Court File No. 1-1, pp 2-3).

Petitioner next sought state post-conviction relief in the trial court on March 15, 2011 (Court File No. 1-1, p. 3), which was denied as time-barred on March 29, 2011 (Court File No.1-1, p. 1). It does not appear that he appealed the denial of his state post-conviction petition. This habeas petition followed on April 27, 2011—well outside § 2244's one-year statute of limitations (Court File No. 1).

## II.    Equitable Tolling

Although this federal habeas petition was filed outside the prescribed time limits identified in 28 U.S.C. § 2244(d), the Court has jurisdiction to consider the petition if the equitable tolling

3

doctrine is applicable in this case. In *Holland v. Florida*, 130 S.Ct. 2549. 2562 (2010), the Supreme Court held that § 2244(d) is subject to equitable tolling only in those rare cases where circumstances beyond a petitioner's control have prevented him from timely filing a habeas petition or timely raising a habeas corpus claim. *See Keenan v. Bagley*, 400 F.3d 417, 420-21 (6th Cir. 2005). The decision as to whether equitable tolling is applicable to an untimely filed § 2254 habeas petition is made on a case-by-case basis, *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002), and the burden to demonstrate that equitable tolling is proper is borne by Petitioner. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). To sum up, a petitioner is entitled to equitable tolling only when he "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S.Ct. At 2562.

*Holland* discussed certain key points to guide a court when rendering an equitable tolling decision. For example, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling" but professional misconduct, which is sufficiently egregious, may create an extraordinary circumstance. *Holland*, 130 S.Ct. at 2562 (2010) (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990) and *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)).

Although the Court's research has not revealed a case from the United States Court of Appeals for the Sixth Circuit finding that substantial delay in notifying a petitioner about the status of his appeal may amount to an extraordinary circumstance, the Sixth Circuit recently reiterated that "the statute of limitations may only be tolled where the circumstances are both beyond the petitioner's control and unavoidable even with due diligence." *Robinson v. Easterling*, 424 Fed.Appx. 2011 WL 1977272, *3 (6th Cir., May 20, 2011).

4

In addition, the Court's research revealed that some "circuits have held that egregious attorney misconduct may constitute extraordinary circumstances that justify equitable tolling." *Fleming v. Evans*, 481 F.3d 1249, 1256 (10th Cir.2007) (citing *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir.2005) (concluding habeas counsel's affirmative misrepresentations, failure to communicate with habeas client, and failure to return client's papers constitute egregious misconduct that may be basis for equitable tolling).[2]

The Sixth Circuit has instructed that a petitioner's "mental incompetence or incapacity may provide a basis for equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011). The issue before the *Ata* court was whether Ata sufficiently alleged that his mental incompetence prevented him from timely filing his habeas petition so that he was entitled to an evidentiary hearing to resolve his tolling claims. *Id*. at 741. The *Ata* court instructs that to determine whether a petitioner is entitled to a hearing on his motion for equitable tolling, a federal court must "determine if the factual allegations are sufficient to support equitable tolling and to review the state court record in order to establish whether petitioner's assertions are refuted by the record or otherwise without merit. Although an evidentiary hearing need not be provided as a matter of right, an evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling on the basis of mental incompetence which caused the failure to timely file." *Id.* at 742 (citing *McSwain v. Davis,* 287 Fed.Appx. 450, 456 (6th Cir. 2008); *accord Hunter v. Ferrell*, 587 F.3d 1304, 1309-10 (11th Cir., 2009) (liberally construing *pro se* pleadings to allege his mental

---

[2] Although the cases finding an extraordinary circumstance included more than counsel's failure to monitor the status of an appeal and notify his client, the instant case also involves more, as counsel, apparently without checking with the court, wrote two letters to Petitioner indicating his case was still pending, when in fact it was not.

5

retardation, which was supported by a competency report, prevented him from understanding his rights and obligations

under the AEDPA and acting upon them in a timely fashion, was sufficient to require evidentiary hearing)).

**III. Facts**

The facts and issues surrounding the timeliness of Petitioner's federal habeas petition in this case are somewhat sparse and are gleaned mainly from the record provided by Petitioner, because, as previously noted, Respondent failed to provide any state court records with his motion to dismiss. There is no dispute that Petitioner filed his § 2254 petition after the one-year limitations period expired.[3]

Liberally construing this *pro se* habeas petition, the Court discerns Petitioner contends the statute of limitations should be tolled because trial counsel's error in leading him to believe his judgment of conviction had not become final for well over a year after it had become final, along with Petitioner's mental illness, amounts to extraordinary circumstances that prevented him from timely filing his federal habeas petition (Court File No. 1, p. 13).

Similar to the *Holland* case, the "extraordinary circumstance" at issue here involves

---

[3] Petitioner was required to file his § 2254 petition on or before November 25, 2006, one year from the date on which his judgment of conviction became final or, assuming without deciding equitable tolling applied as a result of counsel's misconduct, one year from the date on which he received counsel's March 19, 2007, letter notifying him that the state supreme court denied review on August 29, 2005. Regardless of whether Petitioner's one year statute of limitation expired in November 2006 or March 2008, Petitioner's April 27, 2011, habeas petition is tardy. Because neither Petitioner's state habeas nor state post-conviction petitions were filed during the one-year period after his conviction became final, whether using the 2006 or 2008 date, they did not toll the statue of limitations. *See* 28 U.S.C. § 2244(d)(2).

6

counsel's alleged failure to satisfy professional standards of care, intertwined with (similar to the *Ata* case) Petitioner's mental health issue which allegedly prevented him from timely filing his habeas petition. Some historical facts, however, are needed to put this claim into proper perspective.

### A. *Historical Facts*

Petitioner was convicted following a bench trial before the Bradley County Criminal Court of aggravated child abuse by use of a deadly weapon and of aggravated assault involving his minor daughter. Petitioner's convictions and sentence were affirmed on appeal. *State v. Hammond*, No. E2004–01061-CCA-R3-CD, 2005 WL 877051 (Tenn.Crim.App. April 15, 2005), *perm. app. denied* (Tenn. Aug. 29, 2005). Petitioner admitted to striking his daughter 8-10 times with a paddle for revealing their address to her teacher, but insisted he did not cause her extensive injuries. The victim's bottom was raw and covered with blood. She was bruised from her waist to three quarters of the way down her thighs. Her injuries on her bottom were so severe that the treating physician used an ointment commonly used for burn injuries. In addition, two ribs on the victim's right side were fractured. *Id.* at *2-6.

During the sentencing hearing the court found no mitigating factors had been shown, and there is nothing in the record indicating whether trial counsel presented any mitigation evidence. The court then concluded it would not use the two aggravating factors proved by the State to enhance his sentence above the minimum 12 year sentence for a Range II offender but explained it probably would have used the aggravating factors had he been a Range I offender facing an 8-12 year sentence. The court explained the 12 year sentence was consistent with the actual crime. An

7

amended judgment signed by both prosecution counsel and defense counsel was subsequently entered changing Petitioner's sentence to a 12 year sentence as a Range I, standard offender. *Id.* at *11.

### B. *Diligence and Extraordinary Circumstance Facts*

At the conclusion of direct review in Petitioner's case (August 29, 2005), his court appointed trial counsel, Attorney Richard Hughes, Public Defender of the Office of the Public Defender of the 10th Judicial Circuit did not notify him of the status of his case. Instead, in October 2005 and July 2006, he wrote Petitioner that he had not heard from the Tennessee Supreme Court as to whether they were going to review his case (Court File No. 1-1, p. 4-5). Finally, on March 19, 2007, trial counsel wrote Petitioner advising he had called the Tennessee Supreme Court the previous week and learned the Tennessee Supreme Court denied permission to appeal on August 29, 2005 (Court File No. 1-1, p. 6).

Thereafter Petitioner sought assistance from the prison library and a legal aide to pursue collateral proceedings. The record reflects that on November 11, 2007, Petitioner requested assistance to file a post-conviction petition and asked whether Mark Bullard still had his legal papers. The response reflects Petitioner's legal papers were returned to him along with, as the Court discerns, a post-conviction form, and Petitioner was told to do his "own work." (Court File No. 1-1, p. 7). On December 13, 2007, Petitioner sent an inquiry to the library saying he needed his "post conviction to be worked on and filed as soon as possible [sic] I've been waiting since 2005." The response reflects the following: "Professor just got back to work this week. You need to be patient

8

and he said he will help you." (Court File No. 1-1, p. 8).

Petitioner sent another inquiry on April 20, 2008, stating: "I need help filing my post conviction. What is going on with my post conviction. [sic] Are you gonna help me with it? I've been waiting since 2005 to file it." The response states: "Mr. Hudson will assist you, once you are able to come and see him." (Court File No. 1-1, p. 9). On May 25, 2008, Petitioner made the following request: "I need for the legal aide Mr. Hudson to come and see me and assist me in filing a post conviction. I need for him to come to unit 7D. He has all of my legal papers." There was no response but he filed the same request on May 29, 2008, and received the following response: "Mr. Hammond, Here is all your paperwork. You are quite capable of filing your own habe (as evidenced by the above communication)[4]. Respectfully, L.M. Hudson, Legal Aide" (Court File No. 1-1, pp. 10-11). Finally, on November 16, 2010, Petitioner sent the following request to the library: "I need a legal aide to help me get back into court. I have no idea what to do so I need help from the legal aide so I can get back into court." In response, the counselor wrote "OK" and the record office stated the following: "We reviewed your case in Jan. 2007. We couldnt [sic] find a way to assist you then. In Feb [sic] 2007 I delivered a post conviction packet to you. In March 2007 you lost your appeal and you requested our help which we couldnt [sic] do because you had an attorney. In Aug [sic] 2007 we got permissio [sic] from you and Mrs. Walker to file a habeas corpus for you. In Dec [sic] 2007 and in April 2008 he came into the office for help. You show up for help and then not return for months at a time. We are only able to send you a state habe or post conviction packet. We are sorry we cannot help." (Court File No. 1-1, p. 12).

During early 2005, prior to attempting to pursue his post conviction remedies, Petitioner was

---

[4] The above communication refers to Petitioner's written request for assistance.

9

diagnosed as suffering from Schizophrenia, Paranoid Type (Court File No. 1-1, p. 20). Petitioner has submitted documents indicating the State of Tennessee filed a Petition for Appointment of Conservator for Petitioner on February 9, 2005, stating Petitioner was unable to understand the need for treatment for his Schizophrenia, Paranoid Type; incapable of making rational decisions regarding his treatment needs; and had minimal insight into the presence of his illness (Court File No. 1-1, p. 21). A conservator was appointed for Petitioner on March 17, 2005 (Court File No. 1-1, p. 13-16).

In the order appointing a Conservator, the state court considered Dr. Mays' evaluation finding Petitioner incapable of making rational decisions regarding his mental and medical treatment and that he would be incapable of making such decisions in the future before concluding Petitioner was a disabled person within the meaning of Tennessee Code Annotated 34-1-101(7).[5] The court concluded that due to the nature and extent of Petitioner's disability he was unable to give informed consent to medical and mental examinations and treatment, thus requiring a Conservator during the time Petitioner is in the custody, care, and control of the Tennessee Department of Corrections (Court File No. 1-1, pp. 13-14). The Conservator was vested with the right to consent to medical and psychiatric examinations and treatment, including forcible treatment as the Conservator determines it serves Petitioner's needs.

IV.  **Analysis**

   A. *Expiration of Petitioner's Statute of Limitations*

---

[5] This statute provides: "'Disabled person' means a person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, developmental disability or other mental or physical incapacity[.]" Tenn. Code Ann. § 34-1-101(7).

10

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), effective on April 24, 1996, state prisoners seeking habeas relief under 28 U.S.C. § 2254 have been subject to a one-year statute of limitations for filing § 2254 petitions. Those whose convictions became final after that date, as did Petitioner's, were granted one year from the date on which their conviction became final, in which to file a federal habeas petition, subject to the statute being tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2). If a petition is not filed within the time limit, it is untimely absent application of the equitable tolling doctrine.

Petitioner's state convictions became final and the one year habeas statute of limitations commenced on November 29, 2005, upon the lapse of the ninety-day period for filing a petition for certiorari in the Supreme Court of the United States seeking review of his direct appeal. 28 U.S.C. § 2244(d)(1)(A); *Clay v. United States*, 537 U.S. 522, 527-28 (2003); *Bronaugh v. Ohio*, 235 F.3d 280, 286 (6th Cir. 2000). Because the federal habeas statute of limitations had expired prior to the filing of Petitioner's October 24, 2008, state habeas petition and his March 15, 2011, state post-conviction petition, those state filings are of no consequence to the federal habeas one year statute of limitation.[6] Consequently, because the federal habeas statute of limitations expired on November 29, 2006, Petitioner's habeas petition is time-barred by the statute of limitations.

### B.    *Applicable Law*

---

[6]    Even if equitable tolling is applicable and the date on which Petitioner received counsel's notification that the Tennessee Supreme Court denied review (on or about March 23, 2007) is used as the date the federal habeas one year statute of limitations commenced, the limitation period for filing a federal habeas petition would have expired on or about March 24, 2008, prior to Petitioner filing any of his state collateral or post-conviction petitions. Thus, the state filings would not have tolled the federal habeas statute of limitations since they were filed after its expiration.

11

As noted earlier in this memorandum, *Holland* holds that the one-year limitations period will be tolled for a petitioner who can demonstrate "that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S.Ct. at 2562. Petitioner has the burden of establishing he is entitled to equitable tolling, *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

As in *Holland*, one of the "extraordinary circumstances" at issue in this case involves the attorney's failure to satisfy professional standards of care. As in *Ata,* the other or intertwined "extraordinary circumstance" at issue in this case involves Petitioner's mental disability which allegedly prevented him from filing a timely federal habeas motion.

### C. Respondent's Arguments

In his motion to dismiss, Respondent contends Petitioner is not entitled to equitable tolling for two reasons. First Respondent contends "petitioner is not entitled to equitable tolling to excuse his untimely petition on account that he was uninformed about the Tennessee Supreme Court's 2005 denial of his application until 2007. At the very latest, the petitioner learned of the denial when he received the letter dated March 19, 2007, from his state appellate counsel. Still, he did not file his habeas corpus petition until May 9, 2011." (Court File No. 9, p. 6). Next Respondent argues that "[a]t the very least, there is no basis to conclude that anything, including the petitioner's alleged mental defects, prevented the petitioner from filing a more prompt habeas corpus petition after his state appellate counsel informed him in March 2007 that his direct appeal had concluded in 2005. . . . There is no reasonable explanation under this record why the petitioner could not have filed a *pro se* petition comparable to the one filed on May 9, 2011, at some point within the four years prior to its filing. Even if the petitioner can sufficiently show that some extraordinary circumstance

12

prevented a timely filing, he cannot show that he diligently pursued his rights." (Court File No. 9).

### D. *Due Diligence*

At this stage of the proceedings, the question is whether Petitioner has presented sufficient evidence to create a causal connection between his mental incapacity and his ability to file a timely § 2254 petition. Respondent maintains Petitioner did not pursue his rights with due diligence.

Due diligence does not require "maximum feasible diligence," but rather, "[t]he diligence required for equitable tolling purposes is reasonable diligence." *Holland v. Florida*, 130 S.Ct. at 2564. At first blush, it arguably appears Petitioner's failure to file a timely habeas petition was the result of being dilatory and relying on the assistance of a legal aide rather than preparing the petition himself. However, the record before the Court suggests the situation is not that simple.

As previously explained, Petitioner was diagnosed with a significant mental health issue shortly after the instant conviction. Indeed, Petitioner was diagnosed as suffering from Schizophrenia, Paranoid Type and the State sought and obtained a Conservator for Petitioner because he was incapable of giving informed consent regarding his medical and psychiatric treatment (Court File No. 1-1, pp. 13-30). In addition, Petitioner specifically avers under penalty of perjury that he is "not capable of filing actions on his own." (Court File No. 1, p. 13). While Petitioner did file state petitions, it appears he did so only with the help of others rather than solely on his own.[7] Petitioner's request seeking assistance from a legal aide indicate he needed assistance because he had "no idea what to do[.]" (Court File No. 1-1, p. 12).

Petitioner has the burden of demonstrating his mental disability prevented him from pursuing

---

[7] One of the responses to Petitioner's request for help to "get back into court" was–"In Aug. 2007 we got permissio[n] from you and Mrs. Walker to file a habeas corpus for you." (Court File 1-1, p. 12).

13

his rights diligently. Although it appears Petitioner had some knowledge regarding the availability of post-conviction remedies, it is apparent he sought assistance to help draft and file those pleadings. Thus, the question remains whether, considering Petitioner's mental health issues, he exercised reasonable diligence under his circumstances. Although Petitioner's contentions are not sufficient to establish definitively that he diligently pursued his remedies, his allegations are sufficient to raise a factual issue as to whether he diligently pursued his remedies to the best of his ability. Therefore, the Court concludes Petitioner has alleged sufficient specific facts and allegations regarding the due diligence issue to require further development in an evidentiary hearing.

### E. *Petitioner's Mental Disability as a Extraordinary Circumstance*

The Court discerns Petitioner is claiming two intertwined circumstances amount to an extraordinary circumstance sufficient to excuse his failure to comply with the AEDPA's statute of limitations–(1) counsel's letters misleading him until March 19, 2007, to believe his state judgment of conviction had not become final, albeit not purposefully, and (2) Petitioner's mental disability, i.e., Schizophrenia, Paranoid Type. Petitioner contends these two circumstances prevented him from timely filing a § 2254 federal habeas petition.

Petitioner contends his mental disability, in and of itself, constitutes an extraordinary circumstance which caused his failure to timely file his federal habeas petition in this case. Although Petitioner's submissions demonstrate he had some awareness that collateral proceedings needed to be pursued, the record raises the question of whether Petitioner understood what needed to be filed and whether he was capable of taking appropriate steps to pursue those collateral proceedings.

As previously stated, "a petitioner's mental incompetence, which prevents the timely filing

14

of a habeas petition is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations." *Ata v. Scutt*, 662 F.3d at 741. Although mental impairment does not *per se* toll the AEDPA limitations period, *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2nd Cir. 2010); *Hunter v. Ferrell*, 587 F.3d 1304 , 1309 (11th Cir. 2009), it may do so, but only if a petitioner establishes "a causal link between the mental condition and untimely filing[.]" *Ata v. Scutt*, 662 F.3d at 742. Thus, "[t]o obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA"s statute of limitations." *Id.*

Thus, the question becomes whether Petitioner has made the requisite showing of "mental incompetence" to constitute an extraordinary circumstance. Although the record does not include any current evidence documenting Petitioner's mental health status, in addition to the state court appointing Petitioner a Conservator during the duration of his incarceration, Petitioner avers in his federal habeas petition that he is "not capable of filing legal actions on his own[;]" "by reason of [his] mental defect [he] was not able to make clear judgments and could not appreciate the seriousness of his situation[;]" was mentally ill and did not know what was going on during his direct appeal; and he "was mentally ill before, during and after trial and suffers from schizophrenia, paranoid type." (Court File No. 1, pp. 3, 5, 11, 13).

Like *Ata*, Petitioner's allegations are not elaborate, but given the applicable *pro se* standard, the Court reads Petitioner's allegations to state "he was incapacitated . . . [during the time in which he was required to file a timely federal habeas petition] and that his incapacitation prevented him from timely filing his petition." *Id.* At 743. Here, Petitioner was diagnosed with schizophrenia, and claims he is not capable of filing actions on his own." (Court File No. 1). Thus, the Court finds

15

Petitioner has presented sufficient evidence to create a factual issue as to a causal connection between his mental incapacity and his ability to file a timely § 2254 petition.

Although Respondent glosses over Petitioner's mental health issue arguing "there is no basis to conclude that anything, including the petitioner's alleged mental defects, prevented the petitioner from filing a more prompt habeas corpus petition after his state appellate counsel informed him in March 2007 that his direct appeal had concluded in 2005[,]" he claims that even if Petitioner can show some extraordinary circumstance prevented a timely filing, he cannot show he diligently pursued his rights (Court File No. 9). The Court disagrees, as it concludes such a determination is unable to be made based on the record before it. The record does, however, include sufficient allegations to require an evidentiary hearing to determine whether some extraordinary circumstance prevented Petitioner from timely filing his federal habeas petition and whether he can show he diligently pursued his rights.

In summary, construing Petitioner's *pro se* petition liberally as the Court is required to do–specifically considering the averments in his habeas petition regarding his inability to file legal actions on his own–*see Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), and considering his diagnosis as suffering from Schizophrenia, Paranoid Type, and the conservatorship documents reflecting the State sought and obtained a ruling he was disabled and in need of a Conservator during the duration of his incarceration, Petitioner has sufficiently alleged his mental health issues rendered him incompetent and prevented him from timely filing his habeas petition to entitled him to an evidentiary hearing to resolve this tolling claim. *See Ata v. Scutt*, 662 F.3d at 742. Although the evidence is not sufficient to establish definitively that his mental impairment qualifies as an extraordinary circumstance, he sufficiently raised a factual issue as to whether a causal connection

16

exists between his mental impairment and his ability to file a timely § 2254 federal habeas petition.

Accordingly, in light of the uncontroverted record, the Court concludes Petitioner has presented sufficient facts and allegations regarding this alleged extraordinary circumstance to warrant an evidentiary hearing.

V.  Conclusion

For the reasons stated herein, the Court finds Petitioner's has presented sufficient facts and allegations to warrant an evidentiary hearing on his claim that he is entitled to equitable tolling because he diligently pursued his remedies and counsel's shortcomings along with his mental illness constitutes an extraordinary circumstance. The parties will be afforded an opportunity to supplement the record with additional proof and other materials as provided in Rule 7 of the Rules Governing Section 2254 Proceedings.

Therefore, the Court will **RESERVE RULING** on Respondent's motion to dismiss pending an evidentiary hearing to determine whether Petitioner is entitled to equitable tolling. Petitioner will be appointed counsel to represent him as to the equitable tolling issue to be addressed in the evidentiary hearing which will be before the Chief District Judge.

The matter of appointment of counsel is **REFERRED** to Magistrate Judge Susan K. Lee to appoint counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B). Counsel will be appointed to represent Petitioner and investigate, factually develop, and present his equitable tolling claim at an evidentiary hearing. A separate order will enter scheduling the evidentiary hearing before the Chief District Judge.

An appropriate order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**

18